# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

UNITED STATES OF AMERICA,

      Plaintiff,      :      Case No. 1:11-cr-014
                                            Also Case No. 1:13-cv-120

                                            Chief Judge Susan J. Dlott
      -vs-                               Magistrate Judge Michael R. Merz
                                    :

RICHARD T. BRUNSMAN, JR.,

      Defendant.

---

## DECISION AND ORDER

---

This case is before the Court on Defendant's Motion to Amend his Motion to Vacate under 28 U.S.C. § 2255 (Doc. No. 53).  The Motion to Amend was filed April 23, 2013, and served on the United States through the CM/ECF system.  Under S. D. Ohio Civ. R. 7.2, the Government's time to respond to the Motion to Amend was twenty-four days or until May 17, 2013.  No response has been filed, so the Magistrate Judge proceeds to consider the merits of the Motion without any input from the United States.

A motion to amend is a non-dispositive pre-trial motion which an assigned Magistrate Judge has authority to decide, subject to appeal under Fed. R. Civ. P. 72.

The Rules Governing § 2255 Motions do not expressly speak to amendments, but Rule 12 provides that the Federal Rules of Civil Procedure may be applied to the extent they are not inconsistent with the § 2255 Rules or any statute.  Defendant relies on Fed. R. Civ. P. 15 which the Court agrees is appropriately applied to the instant Motion, consistent with past practice of

1

applying that Rule to proposed amendments of § 2255 motions and habeas corpus petitions.

The general standard for considering a motion to amend under Fed. R. Civ. P. 15(a) was enunciated by the United States Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962):

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.  In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of any allowance of the amendment, futility of amendment, etc.
> -- the leave sought should, as the rules require, be "freely given."

371 U.S. at 182.   In considering whether to grant motions to amend under Rule 15, a court should consider whether the amendment would be futile, i.e., if it could withstand a motion to dismiss under Rule 12(b)(6). *Hoover v. Langston Equip. Assocs.,* 958 F.2d 742, 745 (6th Cir. 1992); *Martin v. Associated Truck Lines, Inc.,* 801 F.2d 246, 248 (6th Cir. 1986);  *Marx v. Centran Corp.*, 747 F.2d 1536 (6th Cir. 1984); *Communications Systems, Inc., v. City of Danville*, 880 F.2d 887 (6th Cir. 1989).  *Roth Steel Products v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983); *Neighborhood Development Corp. v. Advisory Council*, 632 F.2d 21, 23 (6th Cir. 1980).  Likewise, a motion to amend may be denied if it is brought after undue delay or with dilatory motive.  *Foman v. Davis*, 371 U.S. 178 (1962)*;  Prather v. Dayton Power & Light Co.*, 918 F.2d 1255, 1259 (6th Cir. 1990).

There is no suggestion of improper delay in seeking this amendment.  Defendant's counsel represents he learned the relevant facts between April 16 and April 23, 2013, the latter being the date the Motion was filed (Motion, Doc. No. 53, PageID 450-451).

Rather the question must be whether the amendment could withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  The purpose of Rule 12(b)(6) is to allow an opposing party to

test whether, as a matter of law, the party purporting to state a claim is entitled to legal relief even if everything alleged in the complaint is true. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993), *citing Nishiyama v. Dickson County, Tennessee*, 814 F.2d 277, 279 (6th Cir. 1987). Put another way, "The purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; it is not a procedure for resolving a contest about the facts or merits of the case." Wright & Miller, FEDERAL PRACTICE AND PROCEDURE: Civil 2d §1356 at 294 (1990).

The test for dismissal under Fed. R. Civ. P. 12(b)(6) has been re-stated by the Supreme Court:

> Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed.2004)("[T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), *see, e.g., Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508, n. 1, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989)(" Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

*Bell Atlantic Corp. v. Twombly*, 550 U.S.544, 555 (2007). *Twombly* overruled *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), specifically disapproving of the proposition that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

In *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), the Supreme Court made it clear that *Twombly* applies in all areas of federal law and not just in the antitrust context in which it was

3

announced. Following *Iqbal*, district courts faced with motions to dismiss must first accept as true all of the factual allegations contained in a complaint. This requirement "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Twombly*, 550 U.S. at 555. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Twombly*, 550 U.S. at 556. Determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Iqbal,* 556 U.S. 662, 678 (2009); *Tam Travel, Inc. v. Delta Airlines, Inc. (In re Travel Agent Comm'n Antitrust Litig.)*, 583 F.3d 896, 903 (6th Cir. 2009). Under *Iqbal*, a civil complaint will only survive a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. ... Exactly how implausible is "implausible" remains to be seen, as such a malleable standard will have to be worked out in practice." *Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 629-630 (6th Cir. 2009).

Defendant seeks to add two claims for relief:

> 1) There was structural error in the Defendant's sentencing proceedings in that the Sentencing Judge failed to disclose to the Defendant, on the record, her opinions expressed at a Status Conference, which arguably provided a basis for recusal, and seek a waiver from the Defendant and/or there was structural error in the Defendant's sentencing proceedings in that the basis for recusal could never be waived and the resulting upward departure was the manifestation of the basis for recusal all to the prejudice of the Defendant.

> 2) Counsel was constitutionally ineffective in failing to seek the recusal of the Sentencing Judge once her opinions were made known to him and the prejudice that flowed from that ineffectiveness manifested itself in an upward departure from the guideline range and resulted in a sentence of 144 months, forty-seven months higher than the recommended guideline sentence.

These new claims are not based on conjecture about what might be proved. Instead, Defendant's counsel has attached to the Motion a transcript of a March 10, 2011, hearing before Chief Judge Dlott in which the underlying facts on which the two new claims for relief depend are set forth in a certified record (Doc. No. 53-1, PageID 455-461). Thus the question before the Court is not whether Defendant could prove the facts he pleads, but whether those facts are sufficient to support his two new claims.

The facts as reflected in the transcript are that on March 10, 2011, Chief Judge Dlott held a status conference in this case to discuss the question of whether or not she was disqualified from handling the criminal case by her prior involvement in a civil case involving Mr. Brunsman.

Chief Judge Dlott had just been assigned the case on February 23, 2011, when District Judge Sandra Beckwith ordered the case reassigned (Doc. No. 9.) Judge Beckwith's Order does not give a reason for reassignment, but the Minutes from Defendant's plea hearing on February 22, 2011, show an oral request from the Defendant that Judge Beckwith recuse herself and her agreement to do so. The transcript of that proceeding shows that Judge Beckwith disclosed to counsel that she had been a neighbor and friend of Defendant's mother approximately fifty years ago, although they had not kept up (Doc. No. 39, PageID 251-252).

The record also discloses that, before Judge Beckwith, the case had been assigned to District Judges Weber and Barrett, both of whom recused themselves from the case on January 27, 2011, with Orders which are identical to the Order of Recusal filed by Judge Beckwith and state no reasons for doing so. Unlike the situation with Judge Beckwith, there is no record to explain the recusals of Judges Weber and Barrett[1].

---

[1] Defense counsel said the prior recusals were "because of their furniture." (Transcript, Doc. No. 53-1, PageID 456.) That remark is completely opaque to the undersigned.

The transcript shows that Chief Judge Dlott revealed to the Defendant, through his counsel, that she had brought some of the underlying facts upon which the criminal case against Mr. Brunsman was based to the attention of the Criminal Chief of the United States Attorney's Office when she had seen a prior civil case involving loans made to Defendant on the same collateral by both LaSalle Bank and Bank of America before Bank of America acquired LaSalle. *Id.* at PageID 458-459. Defense counsel indicated it was not necessary for Chief Judge Dlott to make a disclosure because he had already been told the facts by the assigned Assistant United States Attorney. *Id.* at PageID 457-458. Mr. Perry expressly stated that "I don't think your [Chief Judge Dlott's] handling of the civil case would in any way impact the handling of these criminal cases." *Id.* He repeated his conclusion that there was no basis for recusal after Chief Judge Dlott spoke. *Id.* at 459-460.

Defendant's first proposed additional claim for relief has two parts. The first asserts that there was structural error in the proceedings based on Chief Judge Dlott's failure to disclose her opinions as expressed at this status conference to the Defendant. But that claim is plainly refuted by the record. The Chief Judge's prior involvement with Mr. Brunsman was fully disclosed at the March 10, 2011, status conference. The fact that Brunsman was apparently not personally present is immaterial, as full disclosure was made to his counsel and nothing prevented Brunsman, who was out on bond, from attending.

The second part of the first proposed additional claim is that the purported disqualification arising from the disclosed facts was not waivable. It is clear that an attempted waiver occurred: Mr. Perry, Brunsman's counsel, clearly stated he did not perceive any reason for Chief Judge Dlott to disqualify herself. The same language may be read as counsel's saying that no waiver was necessary, that the facts as stated did not create an appearance of partiality.

6

Defendant cites two statutory bases for disqualification:

> The recusal statute found at 28 U.S.C. §455 contains the following language:
>
> (a) Any justice, judge or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
>
> (b) He shall also disqualify himself in the following circumstances: (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding…

(Motion, Doc. No. 53, PageID 452.) Defendant goes on to claim "[w]ith all due respect to Chief Judge Dlott, she should have disqualified herself from sentencing this Defendant because her impartiality might reasonably be questioned based on her on-the-record comments contained in the attached transcript." *Id.* That argument relates to § 455(a), but disqualification under that section – from participating in a proceeding in which one's "impartiality might reasonably be questioned" – is waivable after full disclosure. 28 U.S.C. § 455(e). Defendant admits that Chief Judge Dlott made disclosure on the record and that Brunsman's counsel waived any disqualification purportedly arising from those facts.

Defendant argues that the authority to waive any disqualification is the client's and not counsel's. (Motion, Doc. No. 53, PageID 453.) No authority is cited for that proposition, and the one case the Magistrate Judge has found holds to the contrary. *Brody v. President & Fellows of Harvard College*, 664 F.2d 10 (1st Cir. 1981), cert denied, 455 U.S. 1027 (1982).

Disqualification under 28 U.S.C. § 455(b)(1) for personal bias or prejudice or personal knowledge of evidentiary facts is not waivable under § 455(e). But "personal" in this statute means something learned outside the judicial role. A disqualifying prejudice or bias must ordinarily be personal or extrajudicial. *United States v. Sammons,* 918 F.2d 592 (6th Cir. 1990);

7

*Wheeler v. Southland Corp.*, 875 F.2d 1246, 1250 (6th Cir. 1989).  That is, it "must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case."  *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966);  *see also Youn v. Track, Inc.,* 324 F.3d 409 (6th Cir. 2003)*; Bradley v. Milliken,* 620 F.2d 1143 (6th Cir. 1980); *Woodruff v. Tomlin*, 593 F.2d 33, 44 (6th Cir. 1979).  The Supreme Court has written:

> The fact that an opinion held by a judge derives from a source outside judicial proceedings is not a *necessary* condition for 'bias and prejudice' recusal, since predispositions developed during the course of a trial will sometimes (albeit rarely) suffice.  Nor is it a *sufficient* condition for 'bias and prejudice' recusal, since some opinions acquired outside the context of judicial proceedings (for example, the judge's view of the law acquired in scholarly reading) will not suffice. ... [J]udicial rulings alone almost never constitute valid basis for a bias or partiality motion.  See *United States v. Grinnell Corp.*, 384 U.S. 563, 583, 86 S. Ct. 1698, 16 L. Ed. 2d 778 (1966). ... Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible."

*Liteky v. United States,* 510 U.S. 540 (1994); *see also Alley v. Bell*, 307 F.3d 380, 388 (6th Cir. 2002)(quoting the deep-seated favoritism or antagonism standard).  The Court went on to hold:

> *Not* establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display.  A judge's ordinary efforts at courtroom administration — even a stern and short-tempered judge's ordinary efforts at courtroom administration — remain immune.

*Id.*

All that Chief Judge Dlott did in this case was to observe in her judicial role facts

adverted to in a civil proceeding which appeared to constitute serious criminal conduct and to forward those facts to the United States Attorney for his evaluation. Arguably, she had a duty under 18 U.S.C. § 4 to report the matter or be guilty of misprision of felony herself.[2] In any event, Chief Judge Dlott's knowledge of Mr. Brunsman's involvement in questionable mortgage transactions was not extrajudicial. Nor does her expression that the facts are "astounding" display any "deep-seated antagonism," but rather a spontaneous reaction to a set of facts.

Even if Defendant had stated a basis for statutory disqualification, it is doubtful whether he could obtain relief under 28 U.S.C. § 2255. A prisoner seeking relief under 28 U.S.C. § 2255 must allege either "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid" *Mallett v. United States*, 334 F. 3d 491, 496-97 (6th Cir. 2003). In other words, to warrant relief under § 2255, a prisoner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect. *Griffin v. United States*, 330 F.3d 733, 737 (6th Cir. 2006), citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). To obtain relief under 28 U.S.C. §2255, a defendant must establish the denial of a substantive right or defect in the trial that is inconsistent with the rudimentary demands of fair procedure. *United States v. Timmreck,* 441 U.S. 780 (1979); *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990)(*per curiam*). Apart from constitutional error, the question is "whether the claimed error was a 'fundamental defect which inherently results in a complete miscarriage of justice,'" *Davis v. United States*, 417 U.S. 333, 346 (1974), *quoting Hill v. United States*, 368 U.S. 424, 428-429 (1962); *see also Griffin v. United States,* 330 F.3d 733, 736 (6th Cir. 2006). Nonconstitutional claims not raised at trial or on direct appeal are waived for collateral review except where the

---

[2] Although American culture's dislike of "snitches" has made misprision prosecutions rare, the culture seems to be changing. Witness widespread calls to hold Roman Catholic bishops "accountable" for not reporting clerical sexual abuse to prosecutors.

9

errors amount to something akin to a denial of due process. *Grant v. United States,* 72 F.3d 503, 506 (6th Cir. 1996).

While there are constitutional bases for judicial disqualification, nothing coming anywhere close to sufficient facts has been alleged here. Compare *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009), and *Tumey v. Ohio*, 273 U.S. 510 (1927).

In sum, Defendant's first proposed additional ground for relief does not state a claim upon which relief can be granted under 28 U.S.C. § 2255.

Defendant's second proposed additional ground for relief is ineffective assistance of trial counsel for not moving to recuse. The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable

> professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168 (1986); *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987).

The facts on which Defendant relies do not show deficient performance on Mr. Perry's part because they do not show that Chief Judge Dlott was disqualified under the Constitution or under 28 U.S.C. § 455(a) or (b)(1). It is not deficient performance to fail to make a meritless motion.

It might be argued that, because Chief Judge Dlott brought these facts to the attention of counsel, she might have been willing to recuse herself even though she was not required to do so. After all, the factual basis for Judge Beckwith's recusal was very attenuated and the record is unclear as to what the factual basis was for recusal of Judges Weber and Barrett. Even so, it is unclear that recusing Chief Judge Dlott would have resulted in Defendant's obtaining a more lenient judge, sentencing being the only issue left in the case. Defendant asserts that Chief Judge Dlott "sentenced the Defendant to an upward variance of 144 months, a forty-seven month increase from the recommended guideline sentence." (Motion, Doc. No. 53, PageID 452.) Defendant received a sentence of twelve years, which represented an upward departure from the Guideline Sentencing range of twenty-three months. As Chief Judge Dlott pointed out in sentencing, Mr. Brunsman was only $300,000 short of the $50 million injury which would have

11

put him in the range of 121-151 months. She also recounts the underlying facts as the most serious case of fraud she had seen in her judicial career. As the Government counsel pointed out, the maximum sentence for bank fraud is thirty years, and Defendant received a sentence of considerably less than half of that. There is no showing that the facts as they appeared in the Presentence Investigation Report were any less serious than those adverted to by Chief Judge Dlott in the civil case.

## Conclusion

Upon the facts proposed to be pled, Defendant's proposed additional grounds for relief fail to state a claim upon which relief can be granted under 28 U.S.C. § 2255. The Motion to Amend is DENIED.

May 22, 2013.

s/ *Michael R. Merz*<br>United States Magistrate Judge