# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

UNITED STATES OF AMERICA,

        Plaintiff,        :      Case No. 1:11-cr-014
                                            Also Case No. 1:13-cv-120

                                            District Judge Susan J. Dlott
        -vs-                            Magistrate Judge Michael R. Merz
                                  :

RICHARD T. BRUNSMAN, JR.,

        Defendant.

# REPORT AND RECOMMENDATIONS ON THE MERITS

This § 2255 case is before the Court for decision on the merits.  After an evidentiary hearing which has been transcribed (ECF No. 99, 100, 101), the parties have briefed the merits (ECF Nos. 105, 108,[1] 109).

Brunsman pleads the following grounds for relief:

> **Ground One:**  The United States, in asking the Court to vary upward from Brunsman's otherwise-applicable Guideline range, committed a material breach of the plea agreement, and in so doing violated Brunsman's Fifth Amendment right to due process of the law.

> **Ground Two:**  Counsel was not acting as the counsel guaranteed Brunsman by the Constitution when he failed to preserve the United States' breach of the plea agreement for review by the Sixth Circuit Court of Appeals.

---

[1] The Government's Response "fully incorporates" two prior pleadings, ECF Nos. 77 & 86, (ECF No. 108 at PageID 1883).  Incorporation by reference of previously filed papers is not an argument and is very unhelpful, particularly when the incorporation refers in blanket fashion to more than fifty pages of prior writing.

**Ground Three:**  Counsel failed to provide the effective assistance of counsel during the sentencing phase of the proceeding.

**Ground Four:**  Counsel failed to provide the effective assistance of counsel during the appellate phase of the proceeding.

**Ground Five:**  Defendant was denied the effective assistance of counsel throughout his underlying criminal proceedings, the cumulative effect of which was to deny Defendant his Sixth Amendment right to effective assistance of counsel.

(First Amended Motion to Vacate, ECF No. 83.)  Brunsman has withdrawn his Fourth Ground for Relief (Merit Brief, ECF No. 105, PageID 1875), and the remaining grounds are ripe for decision.

**Procedural History**

An Information was filed in this case on January 26, 2011, charging Defendant Brunsman with executing a scheme of bank fraud from 2004 until March 5, 2010 (ECF No. 2).  The case was originally assigned to District Judge Herman Weber, then transferred to District Judge Michael Barrett (ECF No. 5).  Judge Barrett recused himself almost immediately and the case was reassigned to District Judge Beckwith (ECF No. 6).  Immediately after conducting the plea colloquy, Judge Beckwith recused herself and the case was reassigned to then-Chief District Judge Susan J. Dlott (ECF No. 9).[2]

On the same date as the Information, the United States filed the Plea Agreement (ECF No. 3).  After taking Brunsman's plea, Judge Beckwith referred the case to the United States Probation Department. Probation Officer Laura Jensen transmitted the initial Presentence Investigation Report ("PSR") to Judge Dlott on May 6, 2011 (ECF No. 12) and the final PSR on

---

[2] Brunsman requested transfer to another judge because Judge Beckwith and his mother had some acquaintance in the past.

August 26, 2011 (ECF No. 18).  Both parties filed sentencing memoranda on September 1, 2011
(ECF No. 19, 20).  The United States responded to Brunsman's memo on September 8, 2011
(ECF No. 21), Brunsman filed a Reply on September 12, 2011), and the United States filed a
supplemental sentencing memorandum on September 13, 2011 (ECF No. 24).

On October 4, 2011, Judge Dlott sentenced Brunsman to 144 months imprisonment (ECF
No. 26, 27).  Brunsman appealed (ECF No. 30) but later voluntarily dismissed the appeal (ECF
No. 40).  He filed the instant Motion to Vacate under 28 U.S.C. § 2255 *pro se* on February 15,
2013 (ECF No. 41).  After initial litigation of the possibility that Judge Dlott should also be
disqualified, Brunsman through counsel filed his First Amended Motion which is the currently
operative pleading (ECF No. 83).

# ANALYSIS

**Ground One:  Breach of the Plea Agreement**

In his first Ground for Relief, Brunsman alleges the United States has breached the Plea
Agreement.  Brunsman asserts that it was part of the plea bargain that the United States would
recommend a sentence within the range calculated by applying the Sentencing Guidelines (Merit
Brief, ECF No. 105, PageID 1861).  Specifically, Brunsman alleges Assistant United State
Attorney Timothy Mangan promised to "request[ ] a sentence of ten years to ensure
proportionality in sentencing."  *Id.*

The Plea Agreement does not contain any provision to this effect.  It provides in pertinent
part that Brunsman will plead guilty to Count One of the Information charging bank fraud (ECF

No. 3 at ¶ 2).  In assenting to that Agreement, Brunsman acknowledged that the maximum penalty was thirty years (360 months) imprisonment. *Id.* at ¶ 3.  He further acknowledged that the Court was required to consider the advisory Sentencing Guidelines, but could impose up to the maximum sentence. *Id.* at ¶ 4.  Brunsman further represented and agreed:

> The defendant has thoroughly reviewed with counsel how the Sentencing Guidelines might apply. The defendant understands that he does not have the right to withdraw his guilty plea if the Court chooses to apply the Sentencing Guidelines, including upward departures, or otherwise imposes a higher sentence than expected.

*Id.* Brunsman waived his right to appeal and sentence within the statutory maximum. *Id.* at ¶ 5. The PSR contains a set of expressly non-binding sentencing stipulations, none of which is an agreement by the United States Attorney to make any recommendation about the maximum sentence which should be imposed. *Id.* at ¶ 7.  Brunsman agreed he had received fully satisfactory representation from Mr. Edward Perry, his retained counsel. *Id.* at ¶ 12.  Brunsman acknowledged that

> There have been no representations or promises from anyone as to what sentence this Court will impose. There have been no representations whatsoever by any agent or employee of the United States, or any other law enforcement agency, as to what the final disposition in this matter should and will be.

*Id.* at ¶ 13.  Finally, ¶ 19 provides:

### ENTIRETY OF AGREEMENT

> 19. This document constitutes the entire agreement between the defendant and the United States Attorney's Office for the Southern District of Ohio in this matter. This document is a complete statement of the agreement in this case and may not be altered unless done so in writing and signed by all parties. <u>There are no agreements, understandings or promises between the parties other than those contained in this agreement.</u>

*Id.* (emphasis sic).

The Sixth Circuit has held that plea agreements are contractual in nature and are to be interpreted according to "traditional principles of contract law. *United States v. Robison*, 924 F.2d 612, 613-14 (6th Cir. 1991), citing *Baker v. United States*, 781 F.2d 85 (6th Cir. 1986). Both of the cited cases were on appeals of denials of § 2255 motions. Baker had asserted that his guilty plea "was based in part on the government's promise to stand mute at sentencing," a promise that was not kept. *Id.* at 87. However, during the plea colloquy, defense counsel denied the existence of any such agreement. The Sixth Circuit affirmed, holding

> This Court agrees with the reasoning of the fifth circuit in *Moore v. Estelle*, 526 F.2d 690 (5th Cir.), cert. denied, 426 U.S. 953, 96 S.Ct. 3180, 49 L. Ed. 2d 1192 (1976), that where the court has scrupulously followed the required procedure, "the defendant is bound by his statements in response to that court's inquiry." 526 F.2d at 696-97, quoting *Jackson v. United States,* 512 F.2d 772, 773 (5th Cir. 1975). Plea bargaining "is an essential component of the administration of justice. Properly administered, it is to be encouraged." *Santobello v. New York,* 404 U.S. 257, 260, 30 L. Ed. 2d 427, 92 S. Ct. 495 (1971). It is impossible for a trial judge to properly administer a plea agreement if it consists of secret terms known only to the parties. Furthermore, "a plea bargain itself is contractual in nature and 'subject to contract-law standards.'" *United States v. Krasn*, 614 F.2d 1229, 1233 (9th Cir. 1980), quoting *United States v. Arnett*, 628 F.2d 1162, 1164 (9th Cir. 1979). To allow defendant to attempt to prove by affidavit that the agreement is otherwise than it appears, unambiguously, on a thorough record would violate established contract-law standards. The Court holds therefore that where Rule 11 procedures were fully adequate, absent extraordinary circumstances, or some explanation of why defendant did not reveal other terms, at least when specifically asked to do so by the court, a defendant's plea agreement consists of the terms revealed in open court, and that therefore there was no breach of agreement in this case. Defendant's plea was knowing and voluntary.

*Id.* at 90.

There is no suggestion in the briefs that Judge Beckwith did not comply meticulously

with Fed. R. Crim. P. 11 in conducting the plea colloquy in this case.  The transcript of that hearing, which took place February 22, 2011, is filed at ECF No. 39.  Brunsman was placed under oath. *Id.* at PageID 229.  He expressed full satisfaction with Mr. Perry's representation. *Id.* at PageID 10.  He stated he understood the Court could impose the maximum sentence of thirty years.  PageID 237.  Perry indicated that his preliminary calculations under the Sentencing Guidelines, which he had discussed with Brunsman, indicated a sentencing range of 121 to 151 months, based on an offense level of 32 and a criminal history category of I. *Id.* at PageID 240.

At Judge Beckwith's request, Mr. Mangan summarized the terms of the Plea Agreement. *Id.* at PageID 244-50.  His summary included recitation of the integration clause. *Id.* at PageID 250.  Perry and Brunsman concurred that the summary was accurate. *Id.* at PageID 255.  Then the following colloquy occurred:

> THE COURT: Okay. Aside from the Plea Agreement which we've just briefly discussed, has any person, including an officer or agent of the government or any of the attorneys in this case, promised or even suggested that you will receive a lighter sentence or any other form of leniency if you plead guilty?
>
> THE DEFENDANT: No.

*Id.*

FBI agent Tony Ott then swore to the relevant facts and Brunsman agreed that they were true, including a gross fraudulent loan amount of $62,050,351.57 and a loan balance of $52,568,116.74. PageID 256-62.  Brunsman again pled guilty and Judge Beckwith tentatively accepted that plea. *Id.* at PageID 263-64.

In *United States v. Hunt*, 205 F.3d 931 (6th Cir. 2000), the defendant asserted on direct appeal that the United States had breached a written plea agreement in several respects.  The court held that "[a]n integration clause normally prevents a criminal defendant, who has entered

6

into a plea agreement, from asserting that the government made oral promises to him not contained in the plea agreement itself." *Id.* at 935, citing *Peavy v. United States*, 31 F.3d 1341 (6th Cir. 1994). It made no difference that the attack in *Peavy* had been collateral and Hunt's attack was on direct review. Judge Carr wrote for the court, "[o]nce the government enters into a Rule 11 plea agreement containing an integration clause, the result ordinarily should be final and immune from collateral attack, whether such attack occurs before or after sentencing." *Id.* at 936.

The purpose of an integration clause in contracts in general is to prevent a variance from the written agreement upon presentation of parol evidence. The classic statement of the rule is

> When two parties have made a contract and have expressed it in a writing to which they have both assented as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent understandings and negotiations will not be admitted for the purpose of varying on contradicting the writing.

3 Corbin on Contracts, § 573 (1960). Because of the need for finality in the criminal process, the integration clause has its most important use in plea agreements.

Based on the cited precedent, the Court finds the Government did not breach the Plea Agreement in this case. Brunsman's First Ground for Relief is therefore without merit. Analysis of the claim on the merits makes analysis of the Government's procedural default argument unnecessary.

**Grounds Two, Three, and Five: Ineffective Assistance of Trial Counsel**

In his Second, Third, and Fifth Grounds for Relief, Brunsman asserts he received

7

ineffective assistance of trial counsel from Edward Perry in the following respects:

> 1. Failure to preserve the breach of plea agreement by the United States for appellate review.
>
> 2. Failure to provide effective assistance of counsel during the sentencing phase of the proceeding.
>
> 3. Failure to provide effective assistance throughout the proceeding with the cumulative effect of denying Defendant his Sixth Amendment right to effective assistance of counsel.

(Merit Brief, ECF No. 105, PageID 1867-68.)

The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington,*[3] 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice. *Berghuis v. Thompkins,* 560 U.S. 370, 389 (2010), *citing Knowles v. Mirzayance,* 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of

---

[3] Unaccountably, Defendant's counsel thrice cites this case as *United States v. Strickland* (ECF No. 105, PageID 1874; ECF No. 109, PageID 1923, 1924).

> hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168 (1986); *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987).

Under *Strickland*, Brunsman's first claim of ineffective assistance of trial counsel is without merit. Because there was no breach of the Plea Agreement, it was not deficient performance to fail to preserve the breach for appellate review. Brunsman's Second Ground for Relief should be dismissed.

Ground Three, however, requires more extended analysis.

Without question, criminal defendants are entitled to the effective assistance of counsel in the plea negotiation process. *Missouri v. Frye*, 566 U.S. ___, 132 S. Ct. 1399, 182 L. Ed. 2d 379 (2012); *Lafler v. Cooper*, 566 U.S. ___, 132 S. Ct. 1376, 182 L. Ed. 2d 398 (2012). In the course of performing his duty to provide that representation, Perry had frequent conversations with Assistant United States Attorney Mangan both before the plea and after the plea.

Perry had worked on a number of cases with Tim Mangan before they both became involved in this case (Evid. Hrg. Tr. ECF No. 100, PageID 1622). Based on that experience,

Perry considered Mangan "to be a competent U.S. Attorney, an honorable person, trustworthy, truthful. He was the kind of person where if we had a conversation and he made a representation I would accept it as being not only truthful but something that he would follow through with." *Id.* That opinion changed as a result of what happened in this case. *Id.* at PageID 1623.

> It all started just before Rick was sentenced when I had a telephone call from Tim, and he advised me during that telephone call that the representations as it related to how the case might be sentenced had changed, his position, specifically the government's position, had changed. Rather than it being a guideline case, it was not going to be a guideline case anymore. The government was going to request a variance and go above the guidelines by two years.
> So, from that conversation, through sentencing, that position was his position. And I felt it was a violation of my trust in him. And it really -- it affected my relationship.

*Id.* at PageID 1623.

When Perry acquired Brunsman as a client, they both agreed on a "proactive approach, to seek out the government and self report." *Id.* at PageID 1624. He first contacted the Cincinnati Criminal Chief AUSA, Anthony Springer, who had never heard of Brunsman. *Id.* at PageID 1625-26. Within a day or two the case was referred to Mr. angan, *Id.* at PageID 1627. As Brunsman explained the crime to Perry, it involved falsifying documents and pledging the same assets to different financial institutions to secure loans. *Id.* at PageID 1628-29. Brunsman was cooperative with the government and provided a computer server with much of the relevant documentation. *Id.* at PageID 1632. The objectives were to achieve a substantial assistance motion and to reduce the loss for guideline calculation purposes. *Id.* at PageID 1634-35. Eventually the substantial assistance fell out of the conversation, but reducing the loss to below fifty million dollars remained a prime objective. *Id.* at PageID 1635. A loss of under fifty million would make the sentencing range 121 to 151 months. *Id.* at PageID 1637-38. The

10

following colloquy is important:

> Q. [Mr. Greger] How firm were you in your belief, based upon those conversations, that the government would agree that it was a guidelines case, wherever those guidelines shook out?
>
> A. [Mr. Perry] Well, if -- you know, at the time when Tim mentioned it to me, it was something that I wanted to hear. I thought, you know, that's perhaps what we are earning: this assurance that it's going to be a guideline case. So, when he made that representation, I thought, you know, that's one -- that's one definite thing that we've got here; the government is not going to stray from the guidelines; he's -- he's indicated it's a guideline case. He went a little bit further than that and said, you know, it's a guideline case; now, you know, I'll be on the high side; I'm sure you'll be on the low side.
>
> So, those are the types of things -- it wasn't just one conversation. There were multiple conversations like that. But, when we had those conversations, it was very reassuring for me, and I accepted what he was saying is what actually was going to happen: that we'd be fighting over the low and the high range, not anything outside the guidelines.
>
> Q. Did you report what was said to you by Mr. Mangan to your client?
>
> A. On multiple occasions, I'm sure.

*Id.* at PageID 1638-39.  These conversations took place before the plea was entered.  *Id.*  Perry testified these reassurances never changed until Mangan filed his sentencing memorandum around September 1, 2011, although Mangan had called him to break the bad news shortly before that.  *Id.*  at PageID 1640.

Mangan filed the government's Sentencing Memorandum on September 1, 2011 (ECF No. 19).  As a result of the reduction of the loss to $49.74 million, the advisory sentencing guideline range was 97-121 months.[4] *Id.*  at PageID 38, 43.  However, "[g]iven the magnitude of this fraud, the United States requests an upward variance and recommends a sentence of 144

---

[4] No party disputes that this is the correctly calculated guideline range.

months of imprisonment, five years of supervised release, and an order of restitution." *Id.*   In addition to describing the extent of Brunsman's criminal activity, the United States Attorney argued that the Guideline Offense Level was inadequate. *Id.*  at PageID 42-43.

Perry filed Brunsman's Sentencing Memorandum the same day (ECF No. 20).  Relevant to the present claims, he wrote

> Finally, while not a "recommendation", [sic] the Assistant U.S. Attorney has, on multiple occasions represented to undersigned counsel that on behalf of his office he would be requesting a sentence of 10 years to ensure proportionality in sentencing. While 10 years is not consistent with the sentence requested by Mr. Brunsman, it is within the range recommended by Probation and within the range from which Mr. Brunsman will ask this Court to consider his request for a downward variance and departure.

*Id.*  at PageID 52.  Perry then made an extended argument for "a downward variance and departure, to reflect a sentence below the guideline range, requiring Brunsman to serve a sentence of between 70 to 87 months." *Id.*  at PageID 63.  Mangan filed a Response Sentencing Memorandum (ECF No. 21), but did not dispute Perry's representation that he had, on multiple occasions, represented to Perry that this was a guidelines case.

Sentencing occurred September 22, 2011 (Sentencing Tr., ECF No. 38).  A substantial portion of the hearing consisted of taking testimony from Dr. Mark Heintzelman. *Id.*  at PageID 146-188.  Judge Dlott then confirmed that the guideline range was 97-121 months. *Id.*  at 189-190.  She noted that the Probation Department had recommended a sentence of 97 months and found no issues which would warrant a departure. *Id.*  at PageID 192-93.

In imposing sentence, Judge Dlott accepted Mangan's argument that the loss here was only $300,000 short of the $50 million loss which would have resulted in a higher guideline range. *Id.*  at PageID 216-17.  Besides that, there was the complexity of the scheme: "[W]hat I

consider significant about this fraud besides the amount of money is the time over which the defendant did it and the  number of fraudulent documents and representations he made to so many different financial institutions and bankers." *Id.*  at PageID 218.  Having imposed the 144-month sentence, she stated "I am accepting the recommendation of the U.S. Attorney's Office, which I seldom do, because I believe that the facts in this case merit that recommendation." *Id.* at PageID 219.

Although he had mentioned it in the Sentencing Memorandum, nowhere during the sentencing hearing did Mr. Perry advise Judge Dlott about the repeated representations of Mr. Mangan that this was a guidelines case or that he had advised his client of those representations. Nor is there any evidence to contradict Brunsman's claim that he relied on those representations in accepting the Plea Agreement.  Indeed, his whole conduct after the plea was taken and before sentencing was to reduce the loss to under $50 million so as to get the benefit of the lower sentencing guideline range.

The Magistrate Judge concludes that a material part of the inducement for Brunsman to enter into the Plea Agreement was this representation by Mangan through Perry that this was to be a guidelines case and the United States intended to recommend a sentence at the upper end of the guideline range.  It was therefore deficient performance on Perry's part to fail to disclose those continued representations to Judge Dlott at the sentencing hearing.

In addition to deficient performance, Brunsman, under *Strickland*, must establish prejudice, but the record fully supports such a finding.  Judge Dlott commented that she has a reputation as the most lenient sentencer in the Court, but here she expressly adopted the recommendation of the United States Attorney to depart upwards.

In the context of a lapsed or rejected plea offer, the Supreme Court has offered guidance

about what facts will show prejudice:

> To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel. Defendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise its discretion under state law. To establish prejudice in this instance, it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time. Cf. *Glover* v. *United States*, 531 U.S. 198, 203, 121 S. Ct. 696, 148 L. Ed. 2d 604 (2001) ("[A]ny amount of [additional] jail time has Sixth Amendment significance").

*Missouri v. Frye*, 132 S. Ct. 1399, 1409 (2012). Applying the principles from *Frye* to this case, the Magistrate Judge concludes there is a reasonable probability Brunsman would have received a lighter sentence if the United States Attorney had abided by his representation that he would recommend a guideline sentence. Judge Dlott indicated she was following the Government's recommendation in this case, something she said she rarely does. It is certainly not improbable that she would have followed such a recommendation had it been lower and within the guideline range.

*Frye* changed the law as it had been laid out in *Hill v. Lockhart*, 474 U.S. 52, 57 (1985), where the Court held that to satisfy the "prejudice" prong of *Strickland* in a negotiated plea case, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty or no contest and would have insisted on going to trial and that there would have been a reasonable chance he would have been acquitted had he gone to trial. *Hill*, 474 U.S. at 58-59. Brunsman cannot satisfy that standard. Perry testified the evidence was overwhelming and the defense strategy from the beginning had been to cooperate. But Perry has

14

demonstrated that an important inducement to get Brunsman to plea and to sign the Plea Agreement was the representation that the Government had evaluated this as a guidelines case.

Applying traditional contract principles to this situation, the Magistrate Judge believes Brunsman should be given the benefit of his bargain. That is, the sentence should be vacated and he should be resentenced with a recommendation from the United States that the new sentence be within the sentencing guideline range of 97 to 121 months.

Brunsman argues that if the Court chooses specific performance as a remedy, which is what the Magistrate Judge is recommending, he should be sentenced by a different judge (Merit Brief, ECF No. 105, PageID 1867). Brunsman gives as a reason for that result his prior efforts to amend the pleadings to allege structural error in the case. That argument has been rejected by the Court in prior filings. However, in *United States v. Barnes*, 278 F.3d 644 (6th Cir. 2002), where the court of appeals ordered specific performance of a plea agreement, it also ordered that the re-sentencing be before a different judge "while intending no criticism to the sentencing judge here." *Id.* at 649. No reason for this order is given, but the court cites similar actions by the Ninth, Fourth, and Fifth Circuits and to the Supreme Court's holding in *Santobello v. New York*, 404 U.S. 257 (1971):

> [W]e conclude that the interests of justice and appropriate recognition of the duties of the prosecution in relation to promises made in the negotiation of pleas of guilty will be best served by remanding the case to the state courts for further consideration. The ultimate relief to which petitioner is entitled we leave to the discretion of the state court, which is in a better position to decide whether the circumstances of this case require only that there be specific performance of the agreement on the plea, in which case petitioner should be resentenced by a different judge, or whether, in the view of the state court, the circumstances require granting the relief sought by petitioner, i. e., the opportunity to withdraw his plea of guilty. We emphasize that this is in no sense to question the fairness of the sentencing judge; the fault here rests on the prosecutor, not on the sentencing judge.

*Id.* at 262-63. No reason is given for this result and the Magistrate Judge agrees with Judge Suhrheinrich's dissent on this point in *Barnes*:

> I also take issue with the majority's ruling that the matter be remanded to a different district judge. Again, *Santobello* does not dictate such a result. In *Santobello*, one prosecutor had promised not to make a recommendation at the time of plea bargaining and then another prosecutor had asked for the maximum punishment during sentencing. Defense counsel immediately objected at the sentencing hearing. As we observed in *Cohen*, in *Santobello*, "the sentencing judge specifically stated that he was not concerned with the alleged breach of a plea bargain agreement because he was "not at all influenced by what the District Attorney says." *Cohen*, 593 F.2d at 771 (quoting *Santobello*, 404 U.S. at 263). Although the Supreme Court did not say so, presumably the Court felt that a remand to the same sentencing judge might prove fruitless given his comment that he would not be influenced by anything the district attorney said. Yet even in that situation the Supreme Court did not require that the case be remanded to a different district judge, but left the matter to the discretion of the state courts. *Santobello*, 404 U.S. at 263.

278 F.3d at 654. As the dissent points out, there is no binding law on the point, but there does appear to be a practice followed by the majority in *Barnes*. The Magistrate Judge merely reports this state of the law and makes no recommendation on what the Court should do as to which District Judge should impose sentence.

It is therefore respectfully recommended that the Motion to Vacate be granted on Ground Two, that the sentence be vacated, and that Brusnman be re-sentenced with the Government recommending a sentence within the sentencing guideline range.

Ground Five, the cumulative effect ineffective assistance of trial counsel claim, should be denied as moot, given the relief recommended on Ground Two.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Motion to Vacate be GRANTED as to Ground Two and DENIED as to Grounds One, Three, and Five. Because reasonable jurists would not disagree with the conclusion as to Grounds One, Three, and Five, Petitioner should be denied a certificate of appealability on those Grounds and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

May 25, 2016.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).